# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

LEON VINCENT TAYLOR,                    )
                                        )
      Petitioner,              )
                                        )
    vs.                           )    Case No. 04-8002-CV-W-FJG
                                        )
DONALD ROPER, et al.,                   )
                                        )
      Respondents.             )

## ORDER

      Currently pending before the Court is petitioner's Original Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in a Capital Case (Doc. No. 24). Also pending is petitioner's Motion for Reconsideration of Motion for Discovery (Doc. No. 51). As a preliminary matter, the Court has reviewed petitioner's motion for reconsideration, the record, and the relevant law, and finds that reconsideration is not warranted.[1] Therefore, petitioner's motion (Doc. No. 51) is **DENIED.** Furthermore, petitioner has requested a hearing as to certain issues presented in his petition. However, this Court finds that a hearing is not necessary given the extensive state court record in this matter. The Court will turn to the Petition for a Writ of Habeas Corpus and consider the same, below.

## I. BACKGROUND

      The Missouri Supreme Court described the facts in petitioner's case as follows:

      On April 14, 1994, Taylor, his half-brother Willie Owens, and his half-sister Tina Owens were driving in Tina's car, discussing various robbery possibilities. Taylor suggested a gas station in Independence where only one person would be working. The trio went to the station and purchased some gasoline. Taylor asked whether they were going to rob it. Tina Owens said no because a little girl was inside. Sarah Yates, an eight-year-old, was

---

      [1]For further discussion, see the Court's examination of guilt phase issue (4), below.

keeping company with Robert Newton, her step-father and the gas station manager.

The three left the station, only to return a few moments later after the oil light came on. Willie Owens went into the station and asked for some oil. Taylor next entered the store and stated they needed a different weight of oil. Taylor then drew a pistol and stated that he would shoot Newton unless he gave them money. Newton complied, handing Owens approximately $400 in a bank money bag. Owens took the money and returned to the car.

Taylor directed Newton and the child to the station's back room. Taylor shot Newton once in the head, killing him. Taylor then pointed the gun at the child. Taylor pulled the trigger, but the gun jammed and did not discharge. Frustrated, Taylor locked the child in the back room and returned to the car. Taylor told Willie and Tina Owens that he had shot the man and that he had to go back inside to get the little girl. However, because the Owenses wanted to leave, they then drove away.

State v. Taylor, 944 S.W.2d 925, 930 (Mo. banc 1997).

Petitioner was convicted upon his plea of not guilty of first-degree murder, first degree robbery, first degree assault, and three counts of armed criminal action in Jackson County, Missouri, Case No. 94-1105. The jury in that trial deadlocked on the issue of punishment for the offense of first degree murder. The trial judge then set his punishment at death for first degree murder, finding three aggravating circumstances to be sustained beyond a reasonable doubt. As to the other offenses, the trial judge sentenced petitioner to life imprisonment for robbery, fifteen years for assault, and one hundred years for each count of armed criminal action, and ordered the sentences be served consecutively to each other and consecutively to the death sentence, for a total sentence of death plus life plus 315 years.

Petitioner appealed his convictions and sentences to the Missouri Supreme Court. Additionally, while the appeal was pending, petitioner filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15. The trial court held an evidentiary hearing, and denied petitioner's 29.15 motion on March 18, 1996. Petitioner appealed the denial of relief, and the case was consolidated with the direct appeal of the conviction and sentence.

2

On April 29, 1997, the Missouri Supreme Court affirmed petitioner's convictions, all of his sentences except the death sentence, and the denial of post-conviction relief.  State v. Taylor, 944 S.W.2d 925 (Mo. 1997).  The Missouri Supreme Court held, however, that improper final argument by the prosecutor required a new penalty phase.  Id. at 938.

On remand, a new penalty phase was conducted.  The second jury recommended a sentence of death, and the trial court sentenced Mr. Taylor to death on April 22, 1999.  Mr. Taylor appealed from the sentence to the Missouri Supreme Court, which affirmed petitioner's death sentence on April 4, 2000.  State v. Taylor, 18 S.W.3d 366 (Mo. 2000).  Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on October 2, 2000.  Taylor v. Missouri, 531 U.S. 901 (2000).

While the petition for writ of certiorari was pending, petitioner filed another Rule 29.15 motion, which was denied after an evidentiary hearing.  Petitioner then appealed the denial of the 29.15 motion, and the Missouri Supreme Court affirmed the trial court on January 27, 2004.  Taylor v. State, 126 S.W.3d 755 (Mo. 2004).  Petitioner then filed the pending petition for writ of habeas corpus.

## II. POINTS RAISED

Taylor raises thirty points in his Petition for a Writ of Habeas Corpus.  Thirteen points relate to guilt phase issues, and seventeen points relate to penalty phase issues.

The guilt phase points are: (1) Mr. Taylor was denied due process of law and effective assistance of counsel when trial counsel was prevented from developing, and failed to develop, critical evidence about the medical examiner's testimony; (2) Mr. Taylor was denied his right to confront and cross-examine the state's witnesses when the trial court limited his cross-examination of Willie Owens, Tina Owens, and Dr. Michael Berkland; (3) Mr. Taylor was denied due process of law and effective assistance of counsel when the trial court refused to allow a one-day continuance so that counsel could depose two late-disclosed witnesses; (4) Mr. Taylor was denied his right to confront and cross-examine

3

witnesses and to present a defense when the court refused to allow his counsel to review the counseling records of the state's eyewitness, Sarah Yates, for the purpose of cross-examination; (5) Mr. Taylor was denied due process of law when the trial court gave a jury instruction that voluntary intoxication was not a defense; (6) Mr. Taylor was denied due process of law when the court did not thoroughly investigate juror misconduct after the victim's family approached prospective jurors; (7) Mr. Taylor was denied due process of law, and the members of the venire in his case were denied equal protection of the law, when the defendant was not allowed to videotape voir dire, and the prosecutor was permitted to strike three African American venirepersons when the prosecutor did not strike similarly situated white venirepersons; (8) Mr. Taylor was denied his rights to due process, to an impartial jury, and to be free from cruel and unusual punishment when the court applied conflicting standards in evaluating venirepersons' responses and sustained a state motion to strike for juror bias yet denied two defense motions to strike for juror bias; (9) Mr. Taylor was denied his right to confront and cross-examine witnesses and to present a defense when the court denied defendant's discovery request for arrest records of state witnesses; (10) Mr. Taylor was denied his right to due process of law when the trial court allowed the prosecutor to argue that there was no explanation of how the gun went off, and that he, as a prosecutor, had made the decision of how to charge Mr. Taylor and what deals to give the codefendants in order to convict Mr. Taylor of First Degree Murder and would do it again in the future; (11) Mr. Taylor was deprived of his rights to due process of law, to a fair jury trial, and to be free from cruel and unusual punishment when the trial court defined "reasonable doubt" so as to lessen the state's burden of proof; (12) Mr. Taylor was denied due process of law when the state presented the testimony of its agent Dr. Michael Berkland, who was later terminated as Jackson County Medical Examiner for falsifying autopsy reports and had his Missouri Medical license revoked; and (13) Mr. Taylor was denied effective assistance of counsel when trial counsel failed to develop evidence

4

that Tina Owens' gun which killed Mr. Newton had been modified so as to make it easier to fire accidentally.

The penalty phase points raised are: (1) Mr. Taylor was denied due process of law, and the members of the venire in his case were denied equal protection of the law, when the prosecutor was permitted to use six of nine strikes to obtain an all-white jury; (2) Mr. Taylor was denied equal protection of the law and the right to be free from cruel and unusual punishment because the Jackson County, Missouri prosecutor discriminated against him on the basis of his race when making the decision to seek the death penalty in his case; (3) Mr. Taylor was denied his rights to due process of law and to be free from cruel and unusual punishment because the trial court improperly permitted victim impact evidence which is not allowed under the decisions of the United States Supreme Court; (4) The trial court violated Mr. Taylor's right to trial by jury when it made a finding of fact and instructed the jury that Mr. Taylor's prior convictions were "serious" and "assaultive"; (5) Improper aggravating circumstances were submitted, violating Mr. Taylor's right to due process of law and to be free of cruel and unusual punishment; (6) The Missouri death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution because it allows both the decision to seek death and the sentence itself to be based on racial discrimination, and does not properly channel and limit the sentencer's discretion in imposing the death penalty; (7) The trial court denied Mr. Taylor his right to full consideration of mitigating evidence, required by the Eighth Amendment to the United States Constitution, when it refused to instruct the jury about mitigating factors presented by the defense at the penalty phase trial. Because the court instructed the jury as to aggravating factors outside the statutory circumstances, this error also denied Mr. Taylor due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution; (8) The prosecutor's argument that "If anyone believes in the death penalty, it is Mr. Taylor" was an improper indirect comment on Mr. Taylor's failure to testify. The argument violated

Case 4:04-cv-08002-FJG   Document 54   Filed 01/08/07   Page 5 of 41

Mr. Taylor's Fifth Amendment right to remain silent and to be free from any inference of guilt based on his silence; (9) Mr. Taylor was denied equal protection of the laws when the Missouri Supreme Court denied his motion to recall its mandate and sentence him to life imprisonment in light of that court's retroactive application of <u>Ring v. Arizona</u> in <u>State v. Whitfield</u>, 107 S.W.3d 253, 267 (Mo. banc 2003); (10) Mr. Taylor was denied effective assistance of appellate counsel when appellate counsel after his first trial and post-conviction proceeding failed to object to his sentence of death by a judge on the ground that such a sentence violated his right to trial by jury; (11) Mr. Taylor was denied effective assistance of counsel when trial counsel failed to investigate and present evidence as to the facts underlying Mr. Taylor's prior second degree murder conviction; (12) Mr. Taylor was denied due process of law when the state argued inconsistent theories of Mr. Taylor's prior offense; (13) Mr. Taylor was denied effective assistance of trial counsel when trial counsel failed to present evidence relevant to Mr. Taylor's mental illness and his mental state at the time of the crime; (14) Mr. Taylor cannot be executed because he is mentally retarded; (15) Mr. Taylor was denied effective assistance of trial counsel when trial counsel failed to offer evidence of his good conduct in prison and positive influence on others; (16) Mr. Taylor was denied effective assistance of counsel when trial counsel failed to impeach the testimony of Willie Owens with the new concessions made to him in exchange for his testimony at the second trial; and (17) The Missouri Supreme Court's proportionality review violated Mr. Taylor's rights to due process of law and to be free from cruel and unusual punishment.

Each of these points will be considered below.

### III. STANDARD

This Court will "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." <u>28</u>

U.S.C. § 2254(a). An application for writ of habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). "In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, "'[a] federal court may not re-examine a state court's interpretation and application of state law.'" McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) (quoting Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)). Pursuant to 28 U.S.C. § 2254(e)(1), in habeas proceedings, the Court presumes state court findings of fact are correct unless the petitioner establishes, the respondent admits, or the record shows otherwise. Additionally, the petitioner may produce evidence that convincingly establishes that the state court's findings were erroneous. Id. (citing Thompson v. Keohane, 519 U.S. 99, 116 S. Ct. 457, 463-64 (1995)).

Further, procedural restrictions, such as exhaustion and default, also limit the Court's review of substantively valid habeas corpus claims. These restrictions are discussed below.

## A.    EXHAUSTION

Initially, a petitioner seeking relief pursuant to a federal habeas corpus action must establish that all claims presented by the petition are exhausted. "[H]abeas corpus . . . shall not be granted unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994) (stating that "[a]s a prerequisite to federal habeas corpus review, a petitioner must exhaust state remedies and present the same legal theories and

factual bases to the state courts"); Hampton v. Miller, 927 F.2d 429, 430-31 (8th Cir. 1991) (stating that "as a preliminary matter, a petitioner cannot ordinarily bring a federal habeas action if some state action remains available in which he or she can still raise the habeas claims"). Therefore, a court should dismiss a petition asserting unexhausted claims. Indeed, even if the petition contains a mixture of exhausted and unexhausted claims, the district court should dismiss the entire action. Rose v. Lundy, 455 U.S. 509, 510 (1982).

However, failure to exhaust state remedies may be excused if "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Thus, exhaustion is not required "if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3 (1981).

Even if petitioner presents unexhausted claims, "[i]n certain circumstances, a federal district court can consider the merits of an unexhausted claim when the exhaustion requirement [of 28 U.S.C. § 2254(b)] has been waived by the state." Victor v. Hopkins, 90 F.3d 276, 278 (8th Cir. 1996) (citing Hampton v. Miller, 927 F.2d 429, 431 (8th Cir.1991)). Waiver of the exhaustion defense by the state is consistent with the underlying policy of the exhaustion requirement which is to "'protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings' and . . . 'to give the State the opportunity for initial review.'" Hampton, 927 F.2d at 431 (quoting Purnell v. Mo. Dept. of Corrections, 753 F.2d 703, 709 (8th Cir. 1985)) (emphasis in original). While a federal district court has the discretion to accept or reject the proposed wavier, "[f]ederal courts will ordinarily only reject State waiver of exhaustion when doing so avoids injustice or manifestly serves the public interest." Hampton, 927 F.2d at 431 (citing Purnell, 753 F.2d at 710).

At the time this federal habeas petition was filed, all claims in the petition were

8

exhausted because petitioner has either fairly presented his claims to the Missouri state courts or because he is procedurally barred from presenting claims that he has not given the Missouri state courts the opportunity to review.  See Coleman v. Thompson, 501 U.S. 722, 732 (1991) (defaulted claims meet the technical requirements for exhaustion). Therefore, there remain no unexhausted issues in the petition.

**B.    PROCEDURAL DEFAULT**

When a federal habeas corpus petitioner has failed to follow a state rule of procedure on appeal or on state post-conviction review, a petitioner is said to have procedurally defaulted on his claim.  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Application of procedural default thus requires the federal district court, initially, to make two inquiries:  (1) whether there is an "independent and adequate" state law basis for denial of petitioner's claims; and (2) whether petitioner can show cause for the procedural defect and prejudice by dismissal without reaching the merits.  Additionally, if a court does not find cause and prejudice, it may still review procedurally defaulted claims if it finds that dismissal on procedural grounds will be a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 495 (1986).

## IV.  DISCUSSION

**A.    GUILT PHASE ISSUES**

(1) Medical examiner's testimony

Petitioner argues that he was denied due process of law and effective assistance of counsel in that he was unable to fully develop evidence related to the medical examiner

who performed the autopsy in this case, Dr. Brij Mitruka. After the autopsy was performed, Dr. Mitruka was discovered to have made mistakes in various autopsies, including the autopsy in this case. Specifically, Dr. Mitruka concluded the Mr. Newton had been shot in the back of the head when, in fact, Mr. Newton was shot in the front of the head. The state called Dr. Michael Berkland as a witness at trial instead of Dr. Mitruka.

Petitioner argues that trial counsel was ineffective for failing to object to Dr. Berkland's testimony on the basis that it was hearsay. On this issue, the Missouri Supreme Court found:

> Taylor next asserts that trial counsel was ineffective for failing to object to Dr. Berkland's testimony as hearsay based solely on Dr. Mitruka's autopsy report. In fact, Dr. Berkland's trial testimony did not recite Dr. Mitruka's conclusions. As stated in Section IV.A.2, Dr. Berkland disagreed with many conclusions in the autopsy report and made his own conclusions from a review of the autopsy photographs and the State's evidence. Consequently, this case is distinguishable from State v. Johnson, 504 S.W.2d 334 (Mo. App. 1973). Moreover, Dr. Berkland, as an expert, could rely on the report of another without admitting it as long as that evidence is of a type reasonably relied upon by other experts in that field. . . . Since Dr. Berkland's testimony was not hearsay, Taylor has failed to show incompetence of counsel and prejudice. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

State v. Taylor, 944 S.W.2d at 939. This Court agrees with respondents that the Missouri Supreme Court's determination on this issue is a reasonable one that is entitled to deference under 28 U.S.C. § 2254(d).

Petitioner next alleges that he received ineffective assistance of counsel because counsel did not cross-examine Dr. Berkland about his testimony in an earlier case, State v. Pearson. (Petition, page 12). The Court has reviewed petitioner's 29.15 pleadings (Respondents' Exhibit D, pp. 3-12 and p. 41) and petitioner's consolidated appeal (Respondents' Exhibit F). This contention was not raised at all in the 29.15 pleadings, and at best indirectly in the consolidated appeal (see Ex. F, p. 35). The Court agrees with respondents that this claim has been defaulted, and that petitioner has failed to make an adequate showing of good cause and actual prejudice to overcome the default so as to

Case 4:04-cv-08002-FJG   Document 54   Filed 01/08/07   Page 10 of 41

allow federal court review.

Finally, petitioner complaint about "the refusal of the trial court to allow the development of the incompetence of Dr. Mitruka" (Petition, page 12). The Missouri Supreme Court found:

> On cross-examination, the trial court allowed defense counsel to explore Dr. Mitruka's erroneous autopsy conclusion and his dismissal. The trial court limited additional inquiry because the issues were collateral and undisputed. Furthermore, Dr. Mitruka's credentials were not relevant to Dr. Berkland's testimony since Dr. Berkland did not rely solely on the autopsy report and in fact reached conclusions contrary to Dr. Mitruka's.

State v. Taylor, 944 S.W.2d at 934. This determination by the Missouri Supreme Court is a reasonable one that is entitled to deference under §2254(d), and is supported by the record (see Tr. 1303-15). Accordingly, petitioner's point is denied.

(2) Cross-examination of Willie Owens, Tina Owens, and Dr. Michael Berkland

(a)    Willie Owens

Petitioner alleges that he was not allowed to adequately cross-examine Willie Owens, stating that he should have been allowed to ask additional questions about statements Willie Owens made to a television station at the time of his arraignment, as well as questions about his understanding of his deal with the prosecutors.

As to this issue, the Missouri Supreme Court found:

> As to Willie Owens, Taylor argues that the trial court prevented questions necessary to establish bias, motive and interest. In fact, the trial court allowed questions regarding Willie's agreement with the State and desire to obtain leniency for Tina Owens, and imposed only minimal limits on cross-examination.

944 S.W.2d at 935. The Court agrees with respondents that this determination is a reasonable one that is entitled to deference under § 2254(d) that is supported by the

11

record.[2]  Petitioner's point is denied.

              (b)    Tina Owens

Petitioner next complained about trial court limitation on the cross-examination of Tina Owens, alleging that she should have been asked about whether she always carried a gun and whether several guns were seized at Tina's home when she was arrested (Petition, pages 13-14).  With respect to this issue, the Missouri Supreme Court found:

> Taylor also contends that the trial court improperly limited cross-examination of Tina Owens on a key issue.  Defense counsel questioned Tina about the weapons and ammunition used in the crimes, highlighting prior inconsistent statements.  The circuit court sustained objections regarding Tina's complete gun arsenal because it was a collateral matter – the ownership of other guns was not a key issue due to Taylor's confession and other evidence that he alone shot the victim with a pistol.

State v. Taylor, 944 S.W.2d at 935.   The Court agrees with respondents that this determination by the Missouri Supreme Court is a reasonable one that is entitled to deference under § 2254(d).  Petitioner's point is denied.

              (c)    Dr. Berkland

Petitioner finally complains that he was not allowed to question Dr. Berkland about Dr. Mitruka's credentials (Petition, page 14).  However, as noted earlier in this Court's

---

[2]As noted by respondents, defense counsel was able to question Willie Owens about many matters that had the potential to demonstrate his bias, motive, and interest in testifying a certain way.  In particular, at trial (1) defense counsel questioned Willie Owens by going over the deal he had struck with the state in exchange for his testimony at petitioner's trial (Tr. 1194); (2) Willie testified that he had been charged with the same six crimes that petitioner had been charged with, that all but one of the charges would be dismissed in exchange for his testimony, and that even that charge would be reduced to second degree robbery (Tr. 1194-95); (3) Willie testified that the state was recommending that he only get an eight year sentence on second degree robbery (Tr. 1195-96); (4) Willie testified about how he and his sister, Tina Owens, were very close (Tr. 1196-97); (5)  Willie expressed his desire that all the charges against Tina Owens would be dismissed (Tr. 1197-1202); and (6) Willie testified that he had been willing to give information regarding another murder case because of the charges against him, but that nothing had ever come of those events (Tr. 1202-05).

examination of petitioner's first issue, the trial court allowed petitioner to explore at trial Dr. Mitruka's erroneous autopsy conclusion and his dismissal. Thus, the Court again agrees with respondents that this point is meritless.

(3) Request for continuance for depositions

Petitioner argues that the trial court erred in not granting a continuance before trial so that petitioner's counsel could depose Willie Owens and Doug Callaghan (the TIPS hotline caller who provided information leading to Taylor's arrest). However, as detailed in respondents' brief, attorney Zembles conducted these depositions prior to trial, so petitioner is unable to demonstrate prejudice. Petitioner also argues that as attorney Zembles missed part of individual voir dire in order to depose Owens, petitioner was prejudiced in that both of his attorneys were not present during individual voir dire. However, the Missouri Supreme Court found:

> Although defense counsel Zembles missed part of individual voir dire in order to depose Owens, Taylor did not demonstrate how the jury selection or trial was compromised by Zembles' temporary absence. Moreover, Taylor had two attorneys, Zembles for the guilt phase and McKerrow for the penalty phase. McKerrow was present throughout the voir dire. Since individual voir dire here was primarily designed to question potential jurors about their attitude toward punishment and the death penalty, McKerrow's presence sufficiently protected Taylor's interest.

State v. Taylor, 944 S.W.2d at 931. The Court agrees with respondents that this determination is a reasonable one that is entitled to deference under § 2254(d). Petitioner's point is denied.

(4) Counseling records of Sarah Yates

Petitioner argues that his rights were violated because his was not allowed to review the counseling records of Sarah Yates, the child eyewitness. The Missouri Supreme Court reviewed this issue under the Confrontation Clause, Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987) and under due process, Brady v. Maryland, 373 U.S. 83 (1963), finding:

> After reviewing the counseling records in camera, the trial court found

13

"absolutely nothing in those records that would be relevant to whether or not she's been coached." The court also stated that the records did not contain any pre-deposition statements except "very vague remembrances of blood coming out of my daddy's head and things like that. None of the circumstances of how it happened, okay?" Since the records were not material and favorable, the trial court's ruling was proper.

Id. at 931. Respondents state this is a reasonable determination that is entitled to deference under § 2254(d).

In his traverse, petitioner argues that this Court should review the child's counseling records de novo, as it is unclear from the record whether the state court reviewed the records. However, as discussed by respondents in their opposition to the motion for additional discovery (Doc. No. 46), this issue appears to have been defaulted by petitioner, as the records were not preserved and any objection to the trial court's handling of this issue was not preserved. Further, although petitioner argues that the information contained in the records would be relevant to guilt phase testimony of Ms. Yates, the petitioner points to no such testimony. Furthermore, the actual testimony regarding Ms. Yates' counseling during the first trial was during the penalty phase, and petitioner had a second penalty phase as a result of his first direct appeal. See State v. Taylor, 944 S.W.2d at 940. Petitioner asserts no error or prejudice related to Ms. Yates' testimony and her counseling records as to the second penalty phase proceedings. Therefore, petitioner's point is denied.

(5) Voluntary intoxication

Petitioner argues the trial court improperly submitted a jury instruction that voluntary intoxication was not a defense in that there was no evidence presented at trial that he was intoxicated, other than his videotaped statement where he said "We was riding around, drinking a little bit . . . .", and the officer replied, "Just that you were nervous and drinking?" and Mr. Taylor replied, "Yeah." Respondents argue, and this Court agrees, that this issue is not cognizable under this Court's habeas jurisdiction, as the issue of whether a state

14

provides for an intoxication defense is a matter of state law, and the Missouri Supreme Court's determination (see State v. Taylor, 944 S.W.2d at 936) that there was sufficient evidence upon which to submit Instruction No. 4 is a determination of state law that should be given absolute deference. Petitioner's point is denied.

(6) Juror misconduct

Petitioner asserts that the trial court did not thoroughly investigate juror misconduct in his trial. Initially, the Missouri Supreme Court noted that petitioner procedurally defaulted upon this claim by failing to include it in his motion for new trial. State v. Taylor, 944 S.W.2d at 932. Petitioner does not demonstrate good cause and actual prejudice sufficient to overcome default. Further (and alternatively), the Missouri Supreme Court found that petitioner failed to demonstrate error by the trial court, finding:

> On the third day of voir dire, veniremember Cynthia Taylor spoke to the court and counsel in chambers regarding a conversation she had overheard. According to Ms. Taylor, two of the victim's relatives approached four females sitting on a bench outside the courtroom and initiated [a dialogue]:
>
> . . . .
>
> The Court asked Ms. Taylor whether the four females were members of the venire. After viewing the panel in court later that morning, Ms. Taylor stated unequivocally, "No, I don't see those ladies. There were four of the ladies and me. I don't see the other four." After noting that no other veniremembers were involved in the conversation, the trial court struck Ms. Taylor for cause.

State v. Taylor, 944 S.W.2d at 932-33. Although the petitioner argues that the trial court did not "fully investigate" this matter, on this record this Court finds the trial court's investigation and resolution of this matter to be reasonable. This Court agrees that Missouri Supreme Court's resolution of this claim is a reasonable one that is entitled to deference under § 2254(d). Petitioner's point is denied.

(7) Videotaping voir dire/Strikes of three African American venirepersons

Petitioner argues that three African American venirepersons were improperly

stricken from the jury, and that the trial court improperly did not allow petitioner to videotape voir dire. As a preliminary note, petitioner has no right to videotape voir dire; as noted by respondents, the videotaping of voir dire has the potential of creating problems, and the trial judge is in a better position to judge the credibility of the prosecutor and the demeanor of the venirepersons than a later court reviewing a videotape. Further, as to venirepersons Gordon and Johnson, the Missouri Supreme Court declined to review those claims as petitioner failed to challenge the state's race-neutral explanation at the time of trial. State v. Taylor, 944 S.W.2d at 934. Petitioner does not address the issue of procedural bar in his petition or traverse; however, this Court agrees that those claims are barred from this Court's review. Finally, with respect to petitioner's claims regarding venireperson Lovelace (Loveland), the Missouri Supreme Court found that (1) the claim was barred from review as petitioner failed to present the claim until after the venire was dismissed, and (2) petitioner had not demonstrated an improper basis for the prosecutor's peremptory challenge. Id. Again, petitioner does not address his failure to preserve the objection in his petition or traverse, and again, this Court agrees that petitioner's claims are barred from federal review. Therefore, the Court finds the state court's determination is reasonable and is entitled to deference under 28 U.S.C. § 2254(d), (e). Petitioner's point is denied.

(8) Venireperson evaluation

Petitioner complains that the trial court was biased in allowing the state's strike of venireperson Paulette Parris for cause, but not allowing petitioner to strike venirepersons Carol Sessler and Delvin Chubick for cause. As noted by respondents, however, since neither Chubick nor Sessler served on the jury as petitioner used peremptory strikes on those venirepersons, there is no basis for relief. Ross v. Oklahoma, 487 U.S. 81, 90-91 (1988); RSMo. § 494.480.4 (1994).

As for venireperson Parris, the trial court removed her because "her general demeanor led me to believe that it was somewhat questionable that she could be fair and

16

impartial in view of what she said." <u>State v. Taylor</u>, 944 S.W.2d at 933. The trial court's finding is entitled to deference in this instance. Although petitioner argues that "bias on the part of the judge can also affect the defendant's right to an unbiased jury," petitioner has not produced evidence of judicial bias that affected his due process rights. Nor has he demonstrated that the jury that actually heard his case was not impartial. Petitioner's point is denied.

### (9) Request for arrest records of state witnesses

Petitioner claims his right to confront and cross-examine witnesses was violated because the trial court did not order the prosecution to disclose the arrest records of Willie Owens and Tina Owens. As to this point, the Missouri Supreme Court found the following:

> Taylor asserts that the arrest records were relevant and material to show self-interest or motive. In fact, Taylor fully cross-examined and impeached Willie and Tina Owens regarding their conversations with the state and Willie's leniency agreement. Because Taylor did not demonstrate that additional material was relevant and material, the trial court did not abuse its discretion by denying disclosure of the arrest records.

<u>State v. Taylor</u>, 944 S.W.2d at 932. Further, this Court notes that petitioner was given disclosure of Willie and Tina Owens' convictions and the existence of any deals made with these witnesses. This Court agrees that the state court's determination is a reasonable one that is entitled to deference under 28 U.S.C. § 2254(d). Petitioner's point is denied.

### (10) Guilt phase closing argument

Petitioner argues that the prosecutor's guilt phase closing argument violated his due process rights. First, petitioner states that the prosecutor improperly commented on petitioner's failure to testify when the prosecutor argued: "Ms. Zembles has been up here arguing for her client and again, at no time has there been any explanation made to you

17

as to how that man could have accidently been shot" (Tr. 1456).[3]  The Missouri Supreme

Court considered this issue, and concluded that the prosecutor was not commenting on

petitioner's silence, but was commenting on the lack of evidence supporting the defense's

theory of the case, noting that petitioner was not the only person who could have explained

an accidental firing.  State v. Taylor, 944 S.W.2d at 935.  This Court concludes that the

Missouri Supreme Court's result is reasonable and entitled to deference under § 2254(d).

Petitioner further argues that the prosecutor improperly commented on the co-

defendants and the charging decision.  The prosecutor's comment was:

> Tina testified and didn't have to.  She can beat this case she believes, why
> come in and testify, why even put her on the stand to say she was even
> there.  Why have anything to do with this case at all?  And Willie's not getting
> that sweet of a deal.  Willie committed robbery and he's going to the
> penitentiary for it and what shaved off his time was to help us convict the
> man who that night committed Murder in the First Degree and the man who
> that night was so vicious and so cold and so deliberate that he was going to
> take the life of a little 8 year old girl.  And that's a decision I will make and I
> will do it again when it comes to selecting witnesses such as Willie Owens for
> a case like this.

State v. Taylor, 944 S.W.2d at 935; Tr. at 1457.  Although the petitioner argues that this

statement amounted to improper personal vouching for the evidence, this Court agrees with

the Missouri Supreme Court that the prosecutor's argument was based on the evidence

adduced at trial.  State v. Taylor, 944 S.W.2d at 936.  This Court further finds that the

petitioner has not demonstrated that the prosecutor had specialized knowledge; instead,

the Court agrees with respondents that the charging decision appears to be based on the

same evidence that was before the jury.  This Court finds the state court's resolution of this

---

[3]As noted by respondents, petitioner's attorney argued in closing statements that
the gun could have gone off accidentally (Tr. 1448-50).

issue to be reasonable and entitled to deference.  Petitioner's point is denied.

<u>(11) Reasonable doubt jury instruction</u>

Petitioner claims that the trial court's definition of "reasonable doubt" was improper and lessened the state's burden of proof.  Petitioner offered the following instruction at trial, recommended by the Federal Judicial Center:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  If, based on your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you may find him guilty.  If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Resp., Ex. B, p. 103.  Over defense objection, the trial court submitted Instruction No. 4 at the guilt phase:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  The law does not require proof that overcomes every possible doubt.  If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty.  If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

Petitioner argues that, without further clarification, a reasonable juror could find "firmly convinced" to be a higher standard of proof than what is required.  The Missouri Supreme Court found this claim meritless.  <u>State v. Taylor</u>, 944 S.W.2d at 937.  Further, this Court notes that prior Eighth Circuit cases have found that the differences between the Federal Judicial Center instruction and the Missouri instruction are insubstantial.  <u>See</u> <u>Harris v. Bowersox</u>, 184 F.3d 744, 751-52 (8th Cir. 1999).  The state court's determination as to this issue is entitled to deference under § 2254(d).  Petitioner's point is denied.

<u>(12) Testimony of Dr. Berkland</u>

Petitioner argues that he was denied his due process rights when the state presented the testimony of Dr. Michael Berkland at his trial.  In 1996, after Mr. Taylor's first

trial but before the Missouri Supreme Court's 1997 decision, the state revealed that Dr. Berkland was fired as Jackson County Medical Examiner, and that he had been found to have falsified autopsy reports.[4]  Respondents argue that petitioner's failure to present this claim on consolidated appeal constitutes default that precludes state and federal court review of this claim.  Petitioner, however, states that this ground is not procedurally barred because Mr. Taylor was prevented (by Dr. Berkland and the prosecution) from learning of this ground in time to include it in any state-authorized proceeding.[5]  Post-conviction counsel asserted that at the time she filed the amended post-conviction motion, she was aware of rumors that Dr. Berkland had been involved in improper conduct while employed by Jackson County, but did not learn of specific information until after the evidentiary hearing was held on the 29.15 motion.  Petitioner's Ex. 3.  After reviewing the record in this matter, the Court finds that petitioner has procedurally defaulted this claim.

Even if petitioner had not procedurally defaulted on this claim, petitioner's claim is meritless.  Respondents indicate that petitioner's claim is not grounded in federal constitutional law, in that petitioner has not presented any cases where a conviction should be set aside when an expert's "credibility was substantially in question . . . ." (See Petition, p. 35).  Petitioner argues that he has sufficiently set forth a claim under Brady v. Maryland 373 U.S. 83, 87 (1963), that the state should have disclosed Dr. Berkland's incompetence as exculpatory evidence. Petitioner also cites Kyles v. Whitley, 514 U.S. 419 (1995), for the proposition that if an agent of the state has information in his possession or knowledge, the state is liable for failing to disclose that information.  However, the facts in Kyles are distinguishable from the facts in the present matter.  In Kyles, the undisclosed information

---

[4]In particular, Dr. Berkland stated in several autopsy reports that he had dissected the brains of the decedents.  However, the brains of the decedents were found in Dr. Berkland's laboratory intact and un-dissected.  Dr. Berkland's Missouri medical license was revoked in 1998.

[5]Petitioner's amended post-conviction motion was filed on December 15, 1995.

included police reports from eyewitnesses identifying other suspects. Here, however, the "fact" that supposedly should have been disclosed was the expert's competence, and petitioner supposes that because Dr. Berkland presumably knew he was not conducting autopsies properly, the knowledge that he was incompetent should be imputed to the state. The Court finds petitioner's line of reasoning to be faulty, and finds that this "knowledge" should not be imputed to the state under these circumstances.

Furthermore, even if petitioner had demonstrated that the state had knowledge of potentially exculpatory evidence related to Dr. Berkland, this alone does not demonstrate petitioner is entitled to a new trial. Instead, the failure to disclose Brady evidence requires a new trial only if the defendant shows that the undisclosed evidence is "material," that is, having a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 678 (1985). Here, petitioner does not argue that the substance of Dr. Berkland's testimony was inaccurate. In fact, Dr. Berkland's testimony largely confirmed what petitioner had already admitted; that the victim had been shot in the head. Petitioner did not claim he did not shoot the victim; instead, petitioner's defense was that the shooting was an accident. Dr. Berkland's testimony does not provide any information relevant to the petitioner's defense. Accordingly, the Court finds that there is no reasonable probability that the result of the proceeding would have been different, had information about Dr. Berkland's competence been provided to the petitioner. See State v. Aaron, 985 S.W.2d 434 (Mo. App. W.D. 1999). Therefore, petitioner's point is denied.

(13) Gun modification

Petitioner argues that trial counsel was ineffective in failing to develop evidence that the gun used in the killing had been modified so as to make it easier to fire accidentally.[6]

---

[6]Notably, the gun was not offered into evidence at trial, and it appears from the record that the gun was disposed of prior to the arrest of petitioner.

Respondents note that this claim was not presented in petitioner's Rule 29.15 motion or in petitioner's amended Rule 29.15 motion. See Respondents' Ex. D. The Court agrees with respondents that this claim has been defaulted, and that petitioner has failed to make an adequate showing of good cause and actual prejudice to overcome the default so as to allow federal court review. Relief is denied as to this issue.

## B. Penalty Phase Issues

### (1) Peremptory strikes of African-American venirepersons

Petitioner argues that he was denied due process of law, and the members of the venire were denied equal protection of the law, when the prosecutor used six of nine peremptory strikes to remove the African-Americans from the panel and obtained an all-white jury. As for jurors Stanley and Wilson, the prosecutor provided race neutral explanations for his peremptory challenges, and petitioner then failed to assert that the race neutral explanation was pretextual. This Court agrees with the Missouri Supreme Court's finding that petitioner failed to establish that the state's justification for these strikes was mere pretext. See State v. Taylor, 18 S.W.3d at 371-72. Petitioner's claims as to these two venirepersons are denied.

As to venireperson Kinsey, the Missouri Supreme Court noted that Kinsey indicated without hesitancy under questioning that she was opposed to the death penalty, whereas the supposedly similarly situated white venireperson, Robinson, indicated that he believed there were pros and cons regarding the death penalty. See State v. Taylor, 18 S.W.3d at 372. This Court agrees that the state courts' determinations as to this issue are reasonable and entitled to deference under 28 U.S.C. § 2254(d) and (e), as well as the Supreme Court's holding in Purkett v. Elem, 514 U.S. 765 (1995).

With respect to venireperson Johnson, the prosecutor asserted that the reasons she was stricken included: (1) answering "F" on the questionnaire (indicating that "Although I'm philosophically, morally or religiously against the death penalty, I do believe I can follow the

22

law that requires me to fully consider the death penalty as one of two possible options that I may vote for in this case."); (2) she indicated she could impose the death penalty in a "Berdella"-type of case; (3) she works for the Ad Hoc group; (4) she has two brothers who were convicted of robbery in the first degree; (5) she had been questioned about a murder her nephew was involved in; and (6) she was a friend of Doc Holliday (an African-American attorney). See Tr. 1539-40. Petitioner notes that the trial court found that the reasons that the venireperson worked for Ad Hoc and knew Doc Holliday were not race-neutral, but nonetheless found that the juror's feelings about the death penalty and the fact that she has relatives with robbery convictions were race-neutral reasons for the strike. See Tr. 1542-43. The Missouri Supreme Court affirmed the trial court's finding that petitioner's rights were not violated. See State v. Taylor, 18 S.W.3d at 372.

Petitioner argues, citing Purkett v. Elem, 514 U.S. 765-767-78 (1995), that this Court should automatically reverse this finding, arguing that once there is a "mixed motive" for the strike, the Court should find that discriminatory intent is inherent in the prosecutor's explanation. However, petitioner has mis-cited the passage in Purkett; the complete citation is, "unless a discriminatory intent is inherent in the prosecutor's explanation, the reason will be deemed race neutral." Id. This passage does not convince the Court that just because one or more of the reasons cited by the prosecutor was deemed by the trial judge to be not race-neutral, the Court must automatically find that the strike itself was motivated by racial discrimination. Instead, the Court notes that the Eighth Circuit has previously found that a finding of a non-racially neutral motive is not fatal, as long as the trial court could make a finding that the prosecutor would have exercised the strike even without the non-racially neutral motive. See United States v. Darden, 70 F.3d 1507, 1532. Here, this Court finds that the trial court engaged in just that sort of analysis, finding the other, race-neutral reasons to be sufficient to support the strike. The state courts' determinations as to this issue are entitled to deference. Petitioner's point is denied as to

this issue.

With respect to venireperson Smith, the prosecution indicated that she was stricken because she was hesitant toward the death penalty, and leaned toward life without parole. She also indicated that she knows Charles Brown (an African-American attorney). The defense asserted that a white venireperson, Ms. Tartaglia, was similarly situated to venireperson Smith. However, the trial court found the prosecutor's explanation credible. Further, respondents argue that venireperson Tartaglia is not similarly situated to venireperson Smith, as Tartaglia stated she did not feel strongly for or against the death penalty, whereas Smith responded to the questionnaire that she would lean toward life without parole. After considering the record on this issue, this Court finds the trial court and Missouri Supreme Court's determinations as to this issue to be entitled to deference. Petitioner's point is denied as to this issue.

Finally, petitioner argues that venireperson Brown was improperly stricken. As to this venireperson, the Missouri Supreme Court found:

> The next prospective juror that defense counsel compared was B.B., who said she had seen the results of someone being abused and the case would have to be extreme for the death penalty to be imposed. B.B. was compared to Venireperson C.K., supra, who stated that he had witnessed fights between his parents.
>
> Up to this point it is clear that the prosecutor gave race-neutral reasons with distinctions regarding the white venirepersons and the black venirepersons struck. . . . However, as to venireperson B.B., there was extensive discussion by the trial court judge and the attorneys regarding whether witnessing abuse was race-neutral when there were several white venirepersons who had witnessed some form of abuse. Ultimately, after looking at all the factors the trial court judge denied the challenge.
>
> Counsel compared Venireperson B.B. to Venireperson P.A., who stated she knew many women who had been sexually assaulted, to Venireperson J.D. who stated that one time she saw her brother-in-law grab her sister, and to Venireperson R.H. who stated she had an abusive husband and she had sought an order of protection. The trial court judge recognized that the white venirepersons all witnessed abuse and were not struck by the state. The trial court judge reviewed venireperson B.B.'s transcript and noted "she definitely

24

made some pretty pointed statements that showed hesitation. . . ." Defense counsel agreed with the trial court judge's assertion that hesitancy towards the death penalty is, on its face, a race-neutral reason. This court has held that a venireperson's hesitation in answering questions regarding the death penalty will survive a <u>Batson</u> challenge.

<u>State v. Taylor</u>, 18 S.W.3d at 372. After reviewing the record on this matter, this Court finds the state court's resolution of this issue to be reasonable and entitled to deference under § 2254(d). <u>See</u> <u>Purkett v. Elem</u>, <u>supra</u>. Petitioner's claim as to this issue is denied. Therefore, petitioner's <u>Batson</u> claims are denied in full.

### (2) Racial discrimination in seeking death penalty

Petitioner argues that he was denied his Eighth and Fourteenth Amendment rights because the prosecutor decided to seek capital punishment against petitioner on the basis of his race (Petition, pages 39-43). The Missouri Supreme Court considered petitioner's claim and found:

To establish an equal protection violation, Taylor directs this court to statistics demonstrating a disparity between black and white defendants and other defendants with similar crimes who were offered life without parole.

These assertions have been rejected in this court in <u>State v. Mallett</u>, 732 S.W.2d 527 (Mo. banc 1987), and <u>State v. Taylor</u>, 929 S.W.2d 209 (Mo. banc 1996). <u>Mallet</u> specifically relied on <u>McCleskey v. Kemp</u> to determine that statistics alone would not be enough to prove an equal protection violation. In <u>McCleskey</u>, the United States Supreme Court held that "statistics indicating a disparate impact seldom suffice to establish an equal protection claim." . . . .

To establish an equal protection violation, a defendant must show an intent to discriminate. <u>Mallett</u>, 732 S.W.2d at 538. Here, in addition to statistics, Taylor presents evidence that in other murder cases, the prosecutor did not seek the death penalty but either allowed the defendant to plead guilty and receive life in prison or that life imprisonment was the punishment that the prosecutor sought at trial. This is insufficient evidence for an equal protection violation.

Prosecutors are given broad discretion in seeking the death penalty. <u>See</u> section 535.030. A prosecutor's broad discretion does not extend to decisions deliberately based on unjustifiable standards such as race or some

25

other entirely arbitrary factor. . . . Taylor must prove both the prosecutor's decision had a discriminatory effect on him and it was motivated by a discriminatory purpose. As the Supreme Court stated in <u>McCleskey</u>, "because discretion is essential to the criminal justice process," the Court demands "exceptionally clear proof" before it will infer that the discretion has been abused. . . . Prosecutors must look at a variety of factors including statutory aggravating circumstances, the type of crime, the strength of the evidence and the defendant's involvement in the crime in deciding whether to seek the death penalty. Taylor does not present "exceptionally clear proof" the prosecutor's office arbitrarily seeks the death penalty for black defendants or for him in particular.

<u>State v. Taylor</u>, 18 S.W.3d at 376-77. This Court further notes that it has previously examined this issue in another case, and found that the statistical evidence presented by petitioner to be insufficient evidence of an equal protection violation. <u>See</u> <u>Nunley v. Bowersox</u>, Case No. 99-8001-FJG, Doc. No. 26 (Order denying Petition for Writ of Habeas Corpus). Therefore, the Court finds the state court's determination reasonable and entitled to deference under § 2254(d).

### (3) Victim impact evidence

Petitioner argues that the trial court improperly allowed victim impact evidence during the second penalty phase. The Missouri Supreme Court found, as to this issue:

Here, the only victim impact evidence presented during the penalty phase came from Astrid Newton, the victim's wife, and Sarah Yates, the victim's step-daughter. Ms. Yates testified that she considered Robert Newton her father and called him "daddy." She testified about her relationship with Robert Newton. Ms. Yates also described the attack against her father and her actions thereafter including saying a long prayer over his body. The victim impact evidence here was relevant and admissible to inform the court of the impact Mr. Newton's death had on his family.

<u>State v. Taylor</u>, 18 S.W.2d at 377. Although petitioner argues that the Missouri Supreme Court improperly decided this issue under Supreme Court precedent, the Missouri Supreme Court cited and considered this issue under <u>Payne v. Tennessee</u>, 501 U.S. 808 (1991). After considering the arguments raised by the parties, this Court finds that the state court's resolution of this matter is reasonable and entitled to deference under § 2254(d).

26

Petitioner's point is denied.

(4) "Serious" and "assaultive" convictions

Petitioner next contends that his Sixth Amendment rights were violated because the judge, not the jury, determined that petitioner's prior convictions of second degree murder, attempted robbery, and robbery, were serious assaultive convictions. Upon consideration by the Missouri Supreme Court, the court found:

> Taylor objected to Instruction No. 6 because it listed Taylor's prior convictions and did not require the jury to find whether Taylor had one or more serious assaultive convictions. The trial court overruled the objection, finding that the submission of individual convictions was consistent with MAI-CR3d 313.40 and the Notes on Use. MAI-CR3d 313.40 is the penalty phase instruction submitting statutory aggravating circumstances. The trial court found the convictions of second degree murder, attempted robbery in the first degree and robbery in the first degree to be serious assaultive convictions. The procedure employed here, in conformance with the MAI and the accompanying notes, detracts in no way from the function of the trier of fact. The court must determine as a matter of law whether the prior convictions are "serious assaultive criminal convictions," and then the jury is allowed to determine as a matter of fact whether defendant indeed had prior convictions of second degree murder, attempted robbery, and robbery.

State v. Taylor, 18 S.W.3d at 377-78.

The Court agrees that the state court's determination as to this issue is reasonable and entitled to deference under § 2254(d). To the extent that petitioner is arguing that the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002), compels a different result, this Court notes that the Supreme Court has determined that Ring does not apply retroactively to cases where the direct appeal became final before Ring was decided. Schriro v. Summerlin, 542 U.S. 348, 353 (2004). Additionally, the Court agrees with respondents' assertion that any alleged error in having the issue of whether a prior conviction is serious and assaultive determined by a judge should be deemed harmless, given the nature of the convictions (second degree murder, attempted robbery in the first degree, and first degree robbery). Finally, the Court notes that the Missouri Supreme Court

further found that, as the jury found another statutory aggravating circumstance (that petitioner murdered his victim for the purpose of receiving money or any other thing of monetary value), so long as one statutory aggravating circumstance is found to be valid, the death sentence should be affirmed. State v. Taylor, 18 S.W.3d at 378. Again, the state court's determination as to this issue is reasonable and entitled to deference. Petitioner's point is denied.

> ### (5) Aggravating circumstances

Petitioner argues that improper aggravating circumstances were submitted to the jury, in that (1) the statutory aggravating circumstances were duplicative, as petitioner's prior convictions were divided into three circumstances; and (2) the statutory aggravating circumstance of commission of murder for the purpose of receiving money or any other thing of monetary value should not have been submitted at the second penalty phase trial under principles of double jeopardy. The Missouri Supreme Court considered both of these contentions. With respect to the separation of the prior convictions, the Missouri Supreme Court found:

> The structure of our death penalty statute implicitly requires each statutory aggravating circumstance be submitted separately because once a jury finds one aggravating circumstance, it may impose the death penalty. Separation of such prior convictions permits the jury to consider the death sentence if any one of several convictions is found to exist . . . . By separating the prior convictions, any potential jury confusion is eliminated.

State v. Taylor, 18 S.W.3d at 378 n.18. This Court agrees with respondents that this determination is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Petitioner's point is denied.

With respect to the submission of the statutory aggravating circumstance that the murder was committed for the purpose of receiving money or any other thing of monetary value, the Missouri Supreme Court found:

> In the first proceeding Judge Mauer did not recite that the aggravating circumstance "defendant murdered Newton for the purpose of receiving

28

money or taking other thing of monetary value from Robert Newton or another" was not proven beyond a reasonable doubt as he did for the fifth aggravating circumstance "avoiding a lawful arrest." Instead, Judge Mauer asserted that it was not applicable to the case because a different MAI paragraph should have been used. This same argument was rejected in State v. Simmons, 955 S.W.2d 752 (Mo. banc 1997). See also Poland v. Arizona, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986).

State v. Taylor, 18 S.W.3d at 378-79. This Court agrees with respondents that this determination is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Petitioner's point is denied.

### (6) The Missouri death penalty statute

Petitioner argues that the Missouri death penalty statute violates the Eighth and Fourteenth Amendments, in that it is racially discriminatory and does not limit the sentencer's discretion in imposing capital punishment. To the extent that the race discrimination claim is the same as guilt phase ground number (7), and penalty phase ground numbers (1) and (2), this claim is denied for the same reasons. To the extent that petitioner is bringing other racial discrimination claims, the Court agrees with respondents that those claims have been defaulted through failure to present them on direct appeal.

Further, although petitioner contends that there is no distinction between first and second degree murder under Missouri law, the Court agrees with respondents that the element of deliberation distinguishes first degree murder from second degree murder. Additionally, the Court does not find that Missouri's death penalty statute contains "too many" aggravating circumstances, or that the jury needs more guidance in the selection of punishment. Petitioner's claim is meritless, and is denied.

### (7) Mitigating evidence instruction

Petitioner argues that the trial court should have submitted petitioner's requested instruction regarding non-statutory mitigating circumstances, and that failure to instruct the jury as to the mitigating circumstances violated petitioner's Eighth Amendment and Fourteenth Amendment due process rights. The Missouri Supreme Court affirmed the trial

court's judgment as to this issue on petitioner's direct appeal. <u>State v. Taylor</u>, 18 S.W.3d at 378 n. 19. As discussed by respondents, courts have repeatedly held that a listing of "non-statutory mitigating circumstances" is not required. <u>See</u> <u>State v. Nicklasson</u>, 967 S.W.2d 596, 608 n.2 (Mo. banc), <u>cert.</u> <u>denied</u>, 119 S.Ct. 549 (1998); <u>Mathenia v. Delo</u>, 975 F.2d 444, 451-52 (8th Cir. 1992), <u>cert. denied</u>, 507 U.S. 995 (1993). This Court finds that the state court's determination as to this issue is a reasonable one entitled to deference under 28 U.S.C. § 2254(d). Petitioner's point is denied.

<u>(8) Prosecutor's comment on Mr. Taylor's belief in the death penalty</u>

Petitioner argues that his Fifth Amendment right to remain silent was violated by the prosecutor's argument that "if anyone believes in the death penalty, it is Mr. Taylor." The Missouri Supreme Court found this claim to be improperly preserved and meritless, noting "The prosecutor's statements at best, raise a weak inference on Taylor's right to not testify." <u>State v. Taylor</u>, 18 S.W.3d 366, 377 n. 15 (Mo. banc 2000). Petitioner correctly notes in his traverse, however, that the Missouri Supreme Court incorrectly stated that this claim had not been properly preserved; in fact, an objection was made on the basis that the argument was inflammatory (Tr. 2194), and the issue was raised in Taylor's motion for a new trial (Resp. Ex. J, Vol. II, p. 220).

Nonetheless, even if this Court applied a de novo review[7] instead of the typical standard of review under 28 U.S.C. § 2254(d), petitioner's claim is meritless. The prosecutor's closing argument was as follows:

> When he talks about retribution, retribution is a good thing. Because what it does - - and he tells you that - - the cycle of death must end.
>
> Ladies and gentlemen, retribution is a punishment that is deserved, and death is what this man deserves because that is what this man deserves because that is what he knows. If there is anyone in this room who believes

---

[7]<u>See</u> <u>Sperry v. McKune</u>, 445 F.3d 1268, 1274-75 (10th Cir. 2006) (noting that claims "presented to, but not decided by, the state courts are not constrained by the § 2254(d) standards.")

Case 4:04-cv-08002-FJG   Document 54   Filed 01/08/07   Page 30 of 41

in the death penalty, it's this man right here.

Tr. 2193-94. Reviewing the above statements in context, this Court agrees with the respondents that the prosecutor did not directly or indirectly comment on petitioner's failure to testify. Instead, the most reasonable inference to be drawn from this comment is that the petitioner "believed in the death penalty" because he executed his victim and attempted to do the same to Ms. Yates. Petitioner's point is denied.

(9) Denial of motion to recall the mandate

Petitioner argues that the Missouri Supreme Court denied his motion to recall the mandate[8] in violation of his equal protection rights. Petitioner argues that the Missouri Supreme Court should have withdrawn the mandate in his case and sentenced him to life imprisonment in light of that court's retroactive application of Ring v. Arizona in State v. Whitfield, 107 S.W.3d 253, 267 (Mo. banc 2003). Petitioner did not raise this equal protection claim in any state court proceedings. Therefore, respondents argue that this claim has been defaulted, and federal review is barred absent a showing of cause and prejudice under Murray v. Carrier. Petitioner replies, however, that while this ground has not been presented to the state court, petitioner is unaware of any state remedy now available to him or any such remedy which he has defaulted, and argues that this Court should give this ground full consideration. After consideration under the standards set forth above, the Court finds that petitioner has defaulted this claim.

Moreover, even if this Court were to consider this claim on the merits, petitioner is not entitled to relief. Petitioner is not in the same situation as the prisoners in State v. Whitfield, 107 S.W.3d 252 (Mo. banc 2003); State v. Thompson, 134 S.W.3d 32 (Mo. banc 2004); State ex rel. Mayes v. Wiggins, 150 S.W.3d 290 (Mo. banc 2004); State v.

---

[8]Here, the mandate refers to Cause No. 78086, in which the Missouri Supreme Court remanded petitioner's case for a new penalty phase. State v. Taylor, 944 S.W.2d 925 (Mo. banc 1997).

Buchanan, 115 S.W.3d 841 (Mo. 2003); and State ex rel. Baker v. Kendrick, 136 S.W.3d 491 (Mo. banc 2004). In those cases, judges had made the findings of fact necessary to impose the death penalty. Missouri has determined that, in such cases, petitioners were entitled to have their death sentence commuted to life imprisonment without parole. See id., applying Ring v. Arizona, 536 U.S. 584 (2002). Petitioner's case, however, is in a significantly different posture. Although at the first penalty phase petitioner was sentenced to death after a judge found the facts necessary to support the sentence, the findings at petitioner's first penalty phase were reversed, and the case was remanded for a new penalty phase. The outcome of the second penalty phase in 1999 was a determination by the jury that the facts necessary to support the death sentence were present. This determination was made by the jury long before the decisions in Ring and Whitfield. Therefore, at the time of those decisions, petitioner (unlike the prisoners in the other cited cases) had been sentenced to death based on the findings of a jury, in compliance with the standards set forth in Ring and Whitfield. Petitioner received the process he was due, and he has demonstrated no equal protection violation. Petitioner's point is denied.

    (10) Counsel's failure to object to sentence of death by a judge

    Petitioner's next ground for relief is predicated on the theory of ineffective assistance of appellate counsel who filed petitioner's first penalty phase appeal, in failing to file an objection to petitioner's sentence of death by a judge. To establish a claim for relief based upon ineffective assistance of counsel, petitioner must show that counsel failed to exercise the skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. Thomas v. Lockhart, 738 F.2d 304, 307 (8th Cir. 1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Petitioner must also demonstrate that he was prejudiced by the alleged incompetence of counsel by showing the existence of a "reasonable probability that, but for counsel's unprofessional

Case 4:04-cv-08002-FJG    Document 54    Filed 01/08/07    Page 32 of 41

errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The Court agrees with respondents that the state of the law in 1997, when the Missouri Supreme Court affirmed petitioner's conviction and remanded the case for re-sentencing, was as described in Walton v. Arizona, 497 U.S. 639 (1990) and Griffin v. State, 756 S.W.2d 475, 487 (Mo. banc 1988), not as described in Ring v. Arizona, 536 U.S. 584 (2002) and State v. Whitfield, 107 S.W.3d 253, 267 (Mo. banc 2003). Appellate counsel's failure to raise a claim that had been rejected by the Missouri Supreme Court and the United States Supreme Court at the time of the appeal cannot be said to be ineffective assistance of counsel under the circumstances. Further, petitioner was given a second penalty phase, in which the jury recommended a sentence of death. Under the circumstances, the Court finds that petitioner has not demonstrated prejudice under Strickland. Therefore, this point will be denied.

### (11) Counsel's failure to investigate petitioner's prior second degree murder conviction

Petitioner argues that his trial counsel at his second penalty phase was ineffective in not investigating and presenting evidence as to the facts underlying petitioner's prior second degree murder conviction for the murder of Jesse Howarter. Petitioner argues that if trial counsel had investigated, he would have learned that Mr. Taylor did not inflict the fatal wound; instead, petitioner states that a co-defendant, Carl Hardin, inflicted the fatal wound(s). The trial court found this claim meritless on consideration of petitioner's Rule 29.15 motion, as did the Missouri Supreme Court, which stated:

> At Taylor's 29.15 hearing, Wolfrum testified that he had read the police reports related to the incident as well as the information from the Hardin case. He also testified that he was aware that the state was allowed to read the information to the jury, which included Taylor's confession to stabbing at Howarter's side. Wolfrum further acknowledged he was aware that under Missouri law, an accomplice is as guilty as the principal of the crime. . . .
>
> Wolfrum also testified that prior to the second penalty phase trial he was

33

aware that the state would rely heavily upon the conviction and that he had strong feelings that the conviction would be damaging to Taylor's case. Wolfrum testified that he was also concerned about how the jury would react to the fact that Taylor had testified against Hardin.   The motion court noted that both Wolfrum and Cooper spent substantial time prior to the second penalty phase trial advocating for specific voir dire procedures that would touch upon the prior murder conviction.  As a result, each juror at the second penalty phase was subject to individual voir dire on the subject of Taylor's prior murder conviction.

The motion court found Wolfrum's testimony at the 29.15 hearing indicated that he and his co-counsel did not object to the prosecutor's references to the prior conviction because they felt that "objecting excessively to the evidence of the murder conviction could unduly emphasize what they considered to be damaging evidence."  As a result, they decided it was better trial strategy not to object.

Taylor had pled guilty to second degree murder as a result of stabbing at Howarter.  In addition, the medical examiner in the case substantiated the existence of a flank wound that corroborated Taylor's testimony.  Whether or not he inflicted the fatal wound, he participated in a violent assault that left a man dead.  If Taylor's counsel had objected to the prosecutor's statements, they would have been drawn into the details of Howarter's death to provide the context for Taylor's testimony that he did not inflict the fatal stab wound.

Given that Howarter suffered sixteen stab wounds and evidence existed that Taylor participated in the attack, it is not unreasonable that Taylor's counsel would choose to ignore the prosecutor's statement rather than exposing the jury to more gory details of the murder.  Moreover, as the motion court noted, an effort by Taylor to trivialize the prior murder plea and conviction in the brutal circumstances of that case could have been "problematic."

This court is to give deference to the decisions made by appellant's counsel. . . .  "There is a presumption that counsel's alleged omissions were sound trial strategy." . . .  Taylor's counsel made a strategic decision to avoid putting emphasis on the details of Taylor's previous murder conviction so as not to damage his case.  The evidence shows that Wolfrum made a sufficient investigation into the facts surrounding the conviction as well as the law regarding accomplice liability.  As mentioned, "[s]trategic choices made after a thorough investigation of the law and facts relevant to plausible opinions are virtually unchallengeable." . . . Taylor's counsel's performance met the degree of skill, care and diligence of a reasonably competent attorney . . . .

Likewise, Taylor has failed to show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." . .

. Rather, the evidence shows that if Wolfrum or Cooper had objected and the details of the previous murder were revealed to the jury, it is likely Taylor's case would have been harmed and the outcome would have been the same. The motion court was not erroneous, clearly or otherwise, when it denied Taylor's motion on this point.

Taylor v. State, 126 S.W.3d 755, 759-60 (Mo. banc 2004)(citations omitted).

The Court agrees with respondents that this determination is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Petitioner has not demonstrated prejudice under Strickland. Petitioner's claim as to this issue is denied.

### (12) Purported inconsistent theories of prior second degree murder

Petitioner argues that he was denied due process of law in that the state argued at trial in the present matter that petitioner stabbed Jesse Howarter in 1975 and was convicted of his murder, whereas at the murder trial of Carl Hardin (co-defendant in the Howarter murder case), the state argued that Hardin stabbed Howarter. The respondents argue that this matter was considered by the state court and found to be meritless, citing Taylor v. State, 126 S.W.3d at 759-60, 765. However, this Court agrees with petitioner that this citation does not support respondents' position; instead, the cited passages indicate that the Missouri Supreme Court considered these purported inconsistencies in relation to petitioner's claim of ineffective assistance of counsel (see the discussion of petitioner's penalty phase Point 11, above). Accordingly, as this point was presented to but not directly ruled by the state courts, this Court will consider this point de novo. See Sperry v. McKune, 445 F.3d 1268, 1274-75 (10th Cir. 2006) (noting that claims "presented to, but not decided by, the state courts are not constrained by the § 2254(d) standards.")

Considering this point on de novo review, this Court finds that the arguments made by the prosecutor at petitioner's second penalty phase trial do not violate petitioner's due process rights. In the second penalty phase, the prosecutor informed the jury in opening statement that petitioner had been convicted of murder for stabbing Howarter (Tr. 1664). The prosecutor read the jury the information for petitioner's charge of murder in the second

35

degree, which stated petitioner "did strike, cut, stab, wound at and upon the body of . . . . Howarter, with the aforesaid knife, thereby feloniously inflicting a mortal wound upon the said . . . Howarter, from which mortal wound . . . Howarter did die on or about the first day of April, 1975." (Tr. 1928). The prosecutor further argued that the jury should consider that petitioner had stabbed a man to death in 1975. (Tr. 2173, 2195). At the trial of Mr. Hardin, petitioner testified that he "stabbed at" Howarter, but that he was not sure whether he actually stabbed him. Further evidence that was put on during the Hardin trial that the bloodstains on Howarter's shirt, petitioner's pants, and the butcher knife used to murder Howarter all matched. (R. Ex. Q, p. 18). The Court finds that the theories argued by the prosecutors in the Howarter murder trial and the Newton murder trial are not so inconsistent as to violate petitioner's due process rights.

Moreover, a contrary finding would be asking the Court to create and apply new law retroactively, in violation of Teague v. Lane. Although petitioner cited Smith v. Groose, 205 F.3d 1045, 1052 (8th Cir. 2000) and Bradshaw v. Stumpf, 125 S.Ct. 2398, 2407-08 (2005) for the proposition that the use of factually contradictory theories violates due process, both of those cases involve prosecutors arguing inconsistent theories at the trials of co-defendants for the murders of the same individuals. These cases do not stand for the proposition that at a later trial in a different matter, the prosecutor cannot cast the facts regarding a prior trial in a manner favorable to the state. Petitioner does not cite any cases involving a factually similar scenario to that presented in petitioner's case. Therefore, petitioner's point is denied.

(13) Mental illness/mental state

Petitioner argues that counsel in his second penalty phase was ineffective for failing to put on evidence of petitioner's mental illness and mental state at the time of the crime. Petitioner argues that Dr. William Logan should have been called to establish these mitigating circumstances. On this claim, the Missouri Supreme Court found:

36

At the 29.15 hearing, Wolfrum testified that he and his co-counsel hoped to get the jury to think of Taylor as a victim of his disadvantaged background and to avoid focusing on specific details at the time of the crime. Wolfrum testified that they hired Dr. Robert Smith, a forensic and clinical psychologist, to evaluate Taylor. Dr. Smith's report contained findings similar to Dr. Logan's. As the motion court noted, "A very substantial part of the important information utilized by Dr. Logan and Dr. Smith was the same information that was presented by counsel to the jury during the course of the retrial of the penalty phase." Dr. Smith's report found that Taylor had alcohol dependence, cannabis dependence, post-traumatic stress disorder, dysthymic disorder, and mixed personality disorder with antisocial and paranoid features.

Wolfrum testified, however, that they specifically avoided having Dr. Smith testify about Taylor's mental state at the time of the murders because they felt that tying his family history to the events of the night of the crime would have been problematic. Instead, Wolfrum testified that he and his co-counsel also retained Robert Dempsey, a psychiatric and clinical social worker and therapist, who testified regarding the fact that Taylor's family life affected his ability to make reasoned and good choices. The testimony of both of these professionals was presented at the second penalty phase to establish that Taylor was a victim of his circumstances.

This line of defense was supplemented by the testimony of Taylor's relatives, friends of Taylor's relatives, a former judge, and a police officer. Penalty phase counsel also presented evidence that Taylor's mother had abused him, stabbed and shot others, and was a chronic alcoholic who drank while Taylor was in utero and gave him alcohol as a child. Penalty phase counsel presented evidence that Taylor never received guidance about what was right and wrong and that he was sexually abused when he was five years old. In addition, counsel presented evidence that Taylor suffered from depression when he was a teenager. All of this evidence was presented in a more general sense as mitigating evidence to show that Taylor was the victim of a troubled upbringing.

Again, Wolfrum stated he was aware of the possibility of presenting evidence similar to Dr. Logan's report regarding Taylor's mental state at the time of the murder but thought it was not a strong direction to pursue. Wolfrum noted that he and co-counsel chose not to include Dr. Logan's type of testimony because it might result in opening the door to damaging statements Taylor had made about the murder. As Wolfrum testified, "[I]f you put a doctor on, you're opening him up to some cross-examination by the state that with hearsay they might find useful. . . that's one danger that might not otherwise come in." Dr. Logan testified at the 29.15 hearing that Taylor knew right from wrong, was able to appreciate the wrongfulness of his actions at the time of

37

the murder, and the murder was not caused by post-traumatic stress disorder but may have been caused by Taylor's despondency and intoxication.

. . .

It was not unreasonable trial strategy for Taylor's penalty phase counsel to attempt to establish that Taylor himself was a victim of a disadvantaged background. The testimony of Dr. Smith, Dempsey, and the other witnesses was presented toward this goal. Penalty phase counsel were not obligated to shop for another expert. Trial counsel also were not unreasonable in fearing that adverse aspects of Dr. Logan's testimony might outweigh the usefulness of his other testimony and might refocus the jury on the brutal facts of the crime.

The motion court's finding on this issue was not erroneous, clearly or otherwise, when it denied Taylor's motion on this point.

Taylor v. State, 126 S.W.3d at 761-62. This Court agrees that the state court's determination is reasonable and is entitled to deference under 28 U.S.C. § 2254(d). Petitioner's motion is denied as to this issue.

<u>(14) Mental retardation</u>

Petitioner argues that is mentally retarded and cannot be executed. See Atkins v. Virginia, 536 U.S. 304 (2002). As a preliminary matter, the Court notes that the Missouri Supreme Court found this claim to be procedurally defaulted as petitioner failed to raise it in the Rule 29.15 motion. Taylor v. State, 126 S.W.3d at 762. Petitioner does not demonstrate good cause and actual prejudice sufficient to overcome this default.

Furthermore, the Court notes that the Missouri Supreme Court found that petitioner was not mentally retarded. Id. at 763. As discussed by respondents, in his state court briefing petitioner relied on one answer by Dr. Logan, who found that petitioner's use of inhalants decreased his IQ by 10 points and placed him in the borderline mentally retarded range. Taylor v. State, 126 S.W.3d at 762-63. However, as noted by the Missouri Supreme Court, Dr. Logan's testimony was that petitioner's IQ only fell into the "borderline retarded" range when he used chemical inhalants; otherwise, Dr. Logan testified that

38

Taylor's IQ was in the "low normal range."  Id.  The Missouri Supreme Court found that the evidence in the record does not support a finding that petitioner was mentally retarded at the time of the offense.

This Court finds the state court's determinations as to these issues to be reasonable and supported by the record, and therefore entitled to deference under 28 U.S.C. § 2254(d).  Petitioner's point is denied.

### (15) Good conduct in prison/positive influence on others

Petitioner argues that trial counsel at the second penalty phase was ineffective in not presenting evidence of petitioner's good conduct in prison and positive influence on others (especially through his poetry).  The Missouri Supreme Court found:

> Wolfrum testified that he and his co-counsel chose not to present a lot of evidence of Taylor's good conduct in prison for strategic reasons.  If they had presented evidence of Taylor's good conduct in prison, the state may have introduced rebuttal evidence of Taylor's misconduct.  Taylor's own evidence at the 29.15 hearing showed that while in the custody of Department of Corrections, he had numerous institutional violations for offenses including fighting, assault, forcible sexual misconduct, rioting (which resulted in the death of one correctional officer and injuries to four others), theft, fraud, disobeying orders, possession or use of controlled substances, giving false information, a sanitary violation, tampering with a locking device, being out-of-bounds, possession of contraband, and destroying state property.  It is not unreasonable that Wolfrum and his co-counsel would choose to avoid having this information presented to the jury.
>
> Nonetheless, Wolfrum stated that they did call at least one witness to testify about the positive effects Taylor had on her.  However, because calling many similar witnesses would have required them to put other death row inmates on the stand, Wolfrum stated they did not call others because they did not want the jury to infer that Taylor had been on death row.  Wolfrum stated that during retrials of penalty phases in these cases, the potential for a jury to infer that the defendant has already been on death row is something to "worry about."
>
> In addition, Wolfrum testified that they did not present evidence of Taylor's poetry for strategic reasons.  He noted that prosecutors can easily belittle the positive nature of poetry by putting it up against the crime for which the defendant was convicted.  Wolfrum said he and his co-counsel were very

39

concerned about Taylor maintaining credibility, and they felt that introducing evidence of his poetry might actually be damaging to the case. Taylor has failed to present evidence as to why this was an unreasonable trial strategy. As a result, Taylor has not demonstrated how he was prejudiced by this strategic choice.

Taylor v. State, 126 S.W.3d at 764-65. This Court agrees that the state court's resolution of this claim is reasonable and entitled to deference under § 2254(d). Petitioner's point is denied.

### (16) Impeachment of Willie Owens

Petitioner argues that counsel at his second penalty phase was ineffective because counsel failed to impeach Willie Owens with details of the state's inducements to get him to testify at the second trial.[9] This Court agrees with respondents that, as petitioner did not present this claim in his Rule 29.15 litigation, this claim has been defaulted. Petitioner has not demonstrated cause and prejudice sufficient to overcome default. Therefore, this ground for relief is denied.

### (17) Proportionality review

Petitioner argues that the Missouri Supreme Court's proportionality review in this matter was so insufficient as to violate his due process rights. This Court notes that the Missouri Supreme Court conducted a proportionality review (see State v. Taylor, 18 S.W.3d 366, 379 (Mo. 2000); Taylor v. State, 126 S.W.3d 755, 763 (Mo. 2004). Once this Court determines that a proportionality review was conducted by the Missouri Supreme Court, this Court's review is complete. See Clay v. Bowersox, 367 F.3d 993, 1005 (8th Cir. 2004) (noting "The Constitution does not require us to look behind [a state supreme court's proportionality] conclusion.") This ground for relief is denied.

### V. CONCLUSION

---

[9]Petitioner alleges that Mr. Owens was promised a letter to the parole board concerning his cooperation and a grant of immunity from further prosecution as to this incident.

Petitioner further requests that the Court grant his petition due to cumulative error, aggregating and analyzing all the errors found to be harmless as to whether their cumulative effect is such that they can no longer be determined to be harmless. However, this Court finds that even considering all the grounds petitioner has set forth in a cumulative manner, petitioner has not demonstrated that the writ should issue.

Therefore, for the reasons stated above, the Court hereby **DENIES** Taylor's Petition for a Writ of Habeas Corpus.

Date:  January 8, 2007           **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri             Fernando J. Gaitan, Jr.
                                     United States District Judge

Case 4:04-cv-08002-FJG   Document 54   Filed 01/08/07   Page 41 of 41